The opinion of the Court was delivered by
Gantt, J.
The Court are of opinion that there is no cause for arresting the judgment in this case. That can only be done upon objections which arise upon the face of the record itself, and which make the proceedings apparently erroneous. JsTo misdirection on the part of the presiding judge ; no defect in evidence, or any other circumstance attending the trial, dehors the record, is a ground for arresting the judgment. See Chit. Crim. Law, tit. Arrest of Judgment.
The present motion, therefore, can be considered as one for a new trial only, for the several reasons taken in the brief: and first, is the prisoner entitled to a new trial for the supposed misdirection in the charge of the *2181 judge ? The correctness and *propriety of the charge d must be judged of by the nature of the offence contained in the *563 indictment and the manner of setting it forth, the evidence in support of it, and with reference to the arguments of counsel. In this indictment sundry persons are included; various counts inserted, under which the persons implicated are respectively charged, first, as principals committing the robbery in person, and secondly, as aiders and abettors, or principals iu the second degree. After that manner is Heyward, the prisoner, charged. From the evidence, no possible doubt can be entertained but that a most unlawful, unprovoked, wanton, and violent assault, has been made on the prosecutor, Peoples, by various persons coming out of the yard and six mile house, of whom Heyward, the prisoner, is positively sworn to have been one. The assault committed on a peaceable, unof-fending stranger, on the highway, travelling homewards from a market, in whose behalf the arm of protection ought rather to have been raised by the proprietor of the house than extended to his annoyance. The evidence shows that immediately consequent upon the outrages offered at the well, and when the prosecutor, Peoples, had proceeded, at most, but two hundred yards from the place where he had been so shamefully abused, he was followed, forced to stop, and robbed. These are strong circumstances, and if not leading to the direct conclusion, certainly bear along with them the probability, at least, of a combination having been formed, on the part of the assailants, to act in concert, upon some unlawful enterprise ; and that they were encouraged to carry it on from the strength of their number, and the certainty of mutual assistance. It was so considered by the attorney-general, who made it a strong ground of argument, contending that the circumstance of the assault at the well, and what immediately afterwards took place, would justify the jury in concluding that Heyward, the prisoner, was a principal in the second degree in this robbery, although he might not have been actually present when it was committed. These *were the considerations which led the pre- „ siding judge, in his charge, to draw the attention of the jury to L 9 the doctrine of constructive presence, if they should have reason to distrust or discredit the positive testimony which went to establish, beyond doubt, if accredited, the personal agency of Heyward in the robbery.
The law read by the presiding judge, and from which his comments were made, was the following, from M’Nally: “ In some eases there may be legal evidence of robbery, when, in truth, the defendant never had any of the loser’s goods in his possession, as when I am robbed by several of one gang, and one of them only takes my money, in which case, in* judgment of law, every one of the company shall be said to take it, in respect of that encouragement which they gave to one another, through the hopes of mutual assistance in the enterprise, nay, though they miss of the first intended prize, and one of them ride from the rest; and rob a third person in the highway, out of their view, and then return to them, all are guilty of robbery, for they came together with an intent to rob, and to assist one another in so doing.” M’Nal. Ev. 596. Now, if the evidence in this case would justify the inference, that the assault at the well was but the prelude of an intended robbery, and there is great difficulty in putting any other interpretation upon it, then it is impossible to conceive law more immediately applicable to the case. Whether the intent to commit robbery existed at the time of the assault by those engaged in it or not, the act committed was nevertheless unlawful, tending *564 to excite a just sense of danger on the part of Peoples, the prosecutor, and certainly paved the way to the more ready accomplishment of what immediately afterwards took place, the robbery. Now, as to the abstract principle contained in the brief, can there be a doubt, that if an association should be formed by a gang of men, with the avowed design and understanding among them to commit robberies generally, and they should assemble at a particular place to carry on their trade and occupation, the *3901 *more conveniently, and especially on the side of the highway, J - that so long as this agreement continues, so long as they prosecute their design, they would respectively become principals in every act of robbery which each might commit in the neighborhood of their range, whether present or not ? The contrary doctrine would lead to the most mischievous consequences ; the law would identify them as one and the same in respect to robberies committed, and this from the countenance and encouragement which each affords the rest; the mutual assistance which they are ready to afford in every enterprise in which any of them may be engaged for the common benefit, in pursuance of their common interest.
In 1 Chitty’s Crim. Law, 25Í, the law is thus laid down : “The presence need not be an actual standing within sight or hearing of the fact; but an active co-operation in the crime, at the time of its commission : as where one stands to keep watch at a convenient distance, while another completes the felony. So, if several persons come to a house with intent to make an affray, and one be killed, while the rest are engaged in riotous and illegal proceedings, though they are dispersed in different rooms, all will be principals in the murder.” Here it is to be observed that no intent to commit murder existed on coming to the house ; the intent was to make an affray, and this intent was common. One of the gang, howevei’, commits murder, the rest, although absent in other rooms, prosecuting the object of their visit, not actually assistant in the murder, and not knowing that it was intended by the perpetrator, still they are considered as principals in the offence. The reason is, that they were engaged in the doing of an act which was unlawful, committing an affray, and shall be held equally answerable for all the consequences to which it may lead. Terror is inspired when numbers assemble themselves together for an unlawful purpose. Each actor is emboldened to go greater lengths by the countenance which the rest affords, and resistance is weakened, if not done away with altogether, by the certain danger ^arising from *321] opposition. There is nothing which the law more abhors than illegal force and violence, and its just reprehension makes the authors answerable in particular cases for more than they may have actually intended to commit, but which has been the consequence of an incipient illegal act. Chitty is supported in his position by 1 Hale, 439. Haw. b. 2, c. 29, s. 8. 1 East. P. C. 258. Dalton, who is also referred to by Chitty, deduces a correctness in this doctrine, from what is said in 2 Sam. 12, ix., where David is told (from God,) that he had killed Uriah, whereas he only commanded Joab to kill him. And in the case of the Serpent, who was aiding and advising the perpetration of the first sin ; and who, by the judgment of the Almighty, had imposed upon him a greater punishment than on the woman or man. The case of the Lord Dacre, noticed in 1 Hale, 439, although a case of murder, shows that the *565 consequences growing out of an unlawful act, devolve upon all who have been engaged in it. In that case, the intent was to steal deer in the park of one Pelham. Rayden, one of the company, killed the keeper in the park. The Lord Dacre and the rest of the company being in other parts of the park, it was ruled that it was murder in them all, and they died for it.
In the case before the Court, although there was no express evidence of any association having been formed by the persons engaged in the affray at the well, and therefore by a remote possibility, the principle said to have been advanced, may have had an influence in the finding of the jury, yet it is thought much more probable, that if the jury were influenced by anything short of the positive testimony of the prisoner being the robber, it must have been a conviction resting on their minds, and growing out of the circumstances of the case, that the robbery was the result of a preconcerted determination to commit it. The evidence affording this conviction being the violence of the assault at the well, a violence calculated, and perhaps intended, to impress upon the mind of the unhappy *victim of it, so strong a sense of their barbarity and r*an9 his own danger, as to induce him afterwards to yield his property L -1 without resistance, rather than forfeit his life by a refusal. The time when the robbery was committed, and the place where, are no inconsiderable circumstances to strengthen the conclusion, that the last act was no more than the consummation of what had been before determined on.
An argument has been offered to show, that, as the place where the robbery was committed, was off the highway, that the prisoner is entitled to his clergy. But the Court cannot view the circumstance in that light. It was a way used in common by travellers, to avoid the sand, and must therefore be considered as much a highway as the road which he left, so long as there was no restriction to the enjoyment of this privilege. A practice not confined to that particular place, but one which extends throughout most of the low country, where the roads are deep with sand.
The evidence being positive as to the prisoner’s being one of the persons who committed the robbery, it appears, from short notes taken by the judge of his charge, that the jury were told that the question was one of identity of person, in the solution of which they were to be governed by the evidence which had been offered.
Prom the most attentive view of the evidence and circumstances incident to this trial, the Court are of opinion that no new trial can be granted, and that the motion for the same, must fail.
Nott, Johnson, HugeR and Bat, concurred.